**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ROSELIA GONZALEZ, JOSH BROTHEIM, NATHANIEL GRIFFIN, DEBBIE PADGETT, MICHELLE COX, and MILTON KING, on Behalf of Themselves and All Others Similarly Situated,** — **PLAINTIFFS**

**v.** — **CASE NO. 4:26-cv-00473-KGB**

**UNITI SERVICES LLC, D/B/A KINETIC,** — **DEFENDANT**

# PLAINTIFFS' BRIEF IN OPPOSITION TO UNITI SERVICES, LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

# TABLE OF CONTENTS

INTRODUCTION .... 1
FACTUAL BACKGROUND .... 2
I. Statement of Facts .... 2
II. The Motion Record .... 3
LEGAL STANDARD .... 4
ARGUMENT .... 5
I. Plaintiffs' Dispute with Kinetic is Not Within the Scope of the Arbitration Agreement .... 5
II. Kinetic Has Failed to Show that Plaintiffs Manifested Assent to the Website's Terms .... 8
III. Kinetic Has Failed to Show that the Customer Plaintiffs Manifested Assent to the Website's Terms Via Account Created or Use of Services .... 9
CONCLUSION .... 12

# TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Amtex Sec., Inc.*,
542 F.3d 1193 (8th Cir. 2008) ........ 6

*Alltel Corp. v. Sumner*,
203 S.W.3d 77 (Ark. 2005) ........ 9

*Anderson v. Hansen*,
47 F.4th 711 (8th Cir. 2022) ........ 7

*AT&T Techs. v. Communs. Workers of Am.*,
475 U.S. 643 (1986) ........ 8

*Ballou v. Asset Mktg. Servs., LLC*,
46 F.4th 844 (8th Cir. 2022) ........ 10

*Barker v. Golf U.S.A., Inc.*,
154 F.3d 788 (8th Cir. 1998) ........ 5

*Campbell v. Nissan Motor Acceptance Co. LLC*,
No. 23-cv-6161-SRB, 2024 U.S. Dist. LEXIS 167849 (W.D. Mo. Feb. 16, 2024) ........ 6

*Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*,
891 F. Supp. 2d 1088, 1099 (D.S.D. 2012) ........ 11

*Duncan v. Int'l Mkts. Live, Inc.*,
20 F.4th 400 (8th Cir. 2021) ........ 5

*Engen v. Grocery Delivery E-Services USA Inc.*,
453 F. Supp. 3d 1231 (D. Minn. 2020) ........ 9, 11

*Fleet Tire Serv. v. Oliver Rubber Co.*,
118 F.3d 619 (8th Cir. 1997) ........ 7

*Foster v. Walmart, Inc.*,
15 F.4th 860 (8th Cir. 2021) ........ 5, 8

*Gelco Corp. v. Baker Indus., Inc.*,
779 F.2d 26 (8th Cir. 1985) ........ 7

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) ........ 7

*Greenberg & Assocs., Inc. v. Cohen*,
No. 05-cv-01233-LTB-MJW, 2005 U.S. Dist. LEXIS 36638 (D. Colo. Dec. 21, 2005) ........ 7

*In re T-Mobile 2022 Customer Data Sec. Breach Litig.*,
829 F. Supp. 3d 700 (W.D. Mo. 2026) ........................................................................ 11

*In re T-Mobile 2022 Customer Data Sec. Breach Litig.*,
No. MDL No. 3073, 2026 U.S. Dist. LEXIS 38170 (W.D. Mo. Feb. 9, 2026)........................ 10

*Jordan v. Best Buy Co., Inc.*,
No. 24-1066 (DWF/TNL), 2025 U.S. Dist. LEXIS 30983 (D. Minn. Feb. 21, 2025)............ 8, 9

*Neb. Mach. Co. v. Cargotec Sols., LLC*,
762 F.3d 737 (8th Cir. 2014) ................................................................................................ 5

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ..................................................................................... 8, 9, 11

*Northport Health Servs. of Ark., LLC v. Posey*,
930 F.3d 1027, 1030 (8th Cir. 2019) ..................................................................................... 5

*One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*,
648 F.3d 258 (5th Cir. 2011) .............................................................................................. 11

*Shockley v. PrimeLending*,
929 F.3d 1012 (8th Cir. 2019) .......................................................................................... 5, 6

*Tyson Foods, Inc. v. Archer*,
147 S.W.3d 681 (Ark. 2004)................................................................................................. 5

*USW, AFL-CIO-CLC v. Duluth Clinic, Ltd.*,
413 F.3d 786 (8th Cir. 2005) ................................................................................................ 7

Plaintiffs Roselia Gonzalez, Josh Brotheim, Nathaniel Griffin, Debbie Padgett, Michelle Cox, and Milton King ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in opposition to Defendant Uniti Services, LLC d/b/a Kinetic's ("Kinetic") Motion to Compel Arbitration and Stay Proceedings (ECF Nos. 8 and 9).

## INTRODUCTION

This putative class action arises from Kinetic's unlawful invasions into its website users' privacy. Kinetic operates a consumer-facing commercial website[1] (the "Website"), through which users can browse Kinetic's services, learn about promotional offers, and/or create and manage user accounts. Like many websites, the Website utilizes proprietary tracking technologies to engage in, *inter alia*, targeted marketing and analytics in order to generate more revenue from users' data. The Website begins placing and transmitting third-party tracking technologies immediately upon a user's initial visit to the Website, before users receive any meaningful notice or opportunity to consent to the interception and/or dissemination of their personal data. Further, the Website's Privacy Policy[2] fails to give proper notice to users about the tracking technologies and makes false representations that users' personally identifiable information is not provided to third parties.

In sum, Kinetic invaded Plaintiffs' fundamental right to privacy and failed to properly represent the Website's data-collection practices by deceiving users and facilitating the unlawful interception of and intrusion into Plaintiffs' personal data. In doing so, Plaintiffs allege that Kinetic violated the federal Wiretap Act, 18 U.S.C. § 2510, et seq., and common law, including invasion of privacy and unjust enrichment. Plaintiffs bring this action on behalf of themselves and a class of similarly situated users harmed by Kinetic's deceptive and unlawful surveillance practices.

---

[1] KINETIC, https://www.gokinetic.com/ (last visited July 30, 2026). *See* Compl. ¶ 2.
[2] Annexed to the Duong Decl. as **Attachment A**.

With the instant Motion, Kinetic seeks to compel Plaintiffs to arbitrate their claims, arguing that Plaintiffs manifested assent to be bound by the Website's purported Terms and Conditions (the "Terms").[3] Kinetic's arguments ignore its burden to show that Plaintiffs unequivocally manifested assent to be bound by the Website's Terms. Kinetic cannot establish that Plaintiffs were on notice of the Terms and, therefore, cannot enforce any provisions of the same. Thus, for the reasons explained in detail herein, Kinetic's Motion must be denied.

## FACTUAL BACKGROUND

### I. Statement of Facts

Kinetic operates the Website, where consumers can browse for information about internet and telecommunications services, view promotional offers and service plans, manage customer accounts, and access customer support and other consumer-focused content. *See* Compl ¶¶ 2, 18 (ECF No. 1).

Upon navigating to the Website, the Website displays a cookie banner ("Cookie Banner")[4] informing users that they may control the sale and/or sharing of their personal data via the Website's cookie settings ("Cookie Settings"). *See* Compl ¶¶ 2, 18. Despite Kinetic's representation in the Cookie Banner and Cookie Settings, the Website begins placing and transmitting third-party tracking technologies, including cookies and web beacons, immediately upon a visitor's initial visit to the Website, before visitors receive any meaningful notice or opportunity to control the interception or dissemination of their data. *See* Compl ¶ 3. Further, Kinetic fails to disclose the Website's use of pixels, which inject third-party code libraries into the user's browser and allow Kinetic to transmit users' electronic communications and online activity

[3] Annexed to the Duong Decl. as **Attachment B**.
[4] *See* Duong Decl. ¶¶ 4-5.

via URLs, metadata, and cookies[5] to third-party advertising and analytics companies (the "Tracking Entities"), including Meta and Google. *Id.* Kinetic's use of cookies, web beacons, and similar tracking technologies (collectively, the "Tracking Tools") enables the Tracking Entities to monitor users' activity—including webpage browsing activity, viewing specific products, and initiating checkout to purchase products—across the Website in real time and associate that activity with persistent identifiers (collectively, "Sensitive Information"). *Id.* In sum, Kinetic surreptitiously deployed the Tracking Tools to intercept and transmit the contents of its Website communications without users' consent. Compl. ¶¶ 3-5, 38-97, 118-149.

## II. The Motion Record

Kinetic's Motion relies primarily on the factual assertions in the Motion's accompanying Declaration of Christopher Duong ("Duong Decl.") and the attachments annexed thereto. However, Kinetic's Motion does not, and cannot, show that an arbitration agreement was formed between Kinetic and any of the six named Plaintiffs. With respect to Plaintiff Brotheim, Kinetic concedes that it "is unable to locate records" for Plaintiff Brotheim under his name. Duong Decl. ¶ 31; Compl. ¶ 13. There is accordingly no evidence that Plaintiff Brotheim ever manifested assent to be bound by the Terms. Kinetic cannot compel arbitration without showing that a valid agreement to arbitrate exists. Further, Plaintiff Brotheim has no recollection of assenting to Kinetic's Terms telephonically. *See* Brotheim Decl. ¶¶ 1-4.

With respect to Plaintiff King, Plaintiff King has asserted that he is not a Kinetic account holder. Compl. ¶ 17; *see also* King Decl. ¶¶ 1-4. Plaintiff King asserts that he has never created an account with Kinetic and has never subscribed to or used Kinetic's internet or other services. *Id.*

[5] In this case, "cookies" are "small, encrypted data strings [Defendant's] server writes to [a user's] hard drive that contains [the user's] unique Kinetic User ID." Compl. ¶ 2.

Plaintiff King has never resided in Chickamauga, Georgia (the city Kinetic asserts is associated with King's purported account). *See* King Decl. ¶¶ 1-4; *see also* Duong Decl. ¶ 32. Further, Kinetic's Declaration does not proffer the Terms that were in place in 1982 (if any); the Duong Decl. attempts to authenticate only the Terms that were purportedly in place "between May 8, 2023, and May 8, 2026." *See* Duong Decl. ¶¶ 6, 10. Accordingly, the Motion record is devoid of any proof showing that Plaintiff King opened the account at issue, that Plaintiff King ever resided at the associated service address, that Plaintiff King received notice of (or manifested assent to be bound by) any arbitration clause at any point in the last four decades, or that whatever Terms may have existed in 1982 contained an enforceable arbitration provision or class waiver.

With respect to Plaintiffs Gonzalez, Griffin, Padgett, and Cox, Kinetic's Declaration asserts that Gonzalez, Griffin, Padgett, and Cox each "established services by phone." Duong Decl. ¶¶ 23, 25, 27, 29. However, the assertions in the Duong Decl. are refuted by the respective Declarations of Plaintiffs Gonzalez, Padgett, and Cox, which state that none of them recall being told about or assenting to Kinetic's Terms telephonically. *See* Gonzalez Decl. ¶¶ 1-4; Padgett Decl. ¶¶ 1-4; Cox Decl. ¶¶ 1-4. In any event, if Plaintiffs Gonzalez, Griffin, Padgett, and Cox signed up for services via phone, then the account-sign-up click wrap is inapplicable to Plaintiffs Gonzalez, Griffin, Padgett, and Cox. With respect to account creation via phone, Kinetic's evidence of Plaintiffs' purported manifestation of assent is limited to a single uncorroborated statement that customers "were verbally advised of the Terms and Conditions." *See* Duong Decl. ¶ 14. Kinetic offers no corroborating evidence.

## LEGAL STANDARD

When deciding a motion to compel arbitration that relies upon documents and information outside of the complaint, the motion is adjudicated on a summary judgment standard, resolving all

factual disputes in favor of the non-movants. *See Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741-42 (8th Cir. 2014). Indeed, "a party cannot be compelled to arbitrate unless it has contractually agreed to be bound by arbitration." *Duncan v. Int'l Mkts. Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021) (citing *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019)). When evaluating whether the movant has met their burden, the court assesses whether a valid arbitration agreement exists and whether the dispute is within the scope of the agreement. *See Shockley*, 929 F.3d at 1017; *Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021). To determine whether an agreement to arbitrate exists, "we look to the forum state's contract law – here, Arkansas." *Northport Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (citing *Barker v. Golf U.S.A., Inc.,* 154 F.3d 788, 791 (8th Cir. 1998)). To form a valid arbitration agreement, the following essential elements must be present: "(1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations." *Id.* (citing *Tyson Foods, Inc. v. Archer*, 147 S.W.3d 681, 684 (Ark. 2004)). Indeed, internet contracts to arbitrate are like any other; valid formation requires mutual assent and privity. *See Foster*, 15 F.4th at 863.

## ARGUMENT

Kinetic cannot meet its burden to show that Plaintiffs manifested assent to arbitrate their claims or that Plaintiffs' claims are within the scope of the arbitration provision at issue. The record before the Court does not reflect that Plaintiffs had actual or constructive notice of the Website's Terms. Therefore, Kinetic's Motion should be denied.

### I. Plaintiffs' Dispute with Kinetic is Not Within the Scope of the Arbitration Agreement

Kinetic's Privacy Policy states:

> For individually identifiable information received in the United States ***from Users in the European Union***, Kinetic adheres to the following principles:
> …
> …

> …
>
> **Dispute Resolution:** For complaints that cannot be resolved between Kinetic and the User, such disputes will be governed by the current provisions of Kinetic's Terms and Conditions, or the terms of your written agreement with Kinetic, if applicable.

Duong Decl., **Attachment A** at 13-14 (emphasis added). The dispute-resolution provision at issue therefore applies only to users in the EU, and the record makes clear that all Plaintiffs are US residents. *See* Compl ¶¶ 12-18; Def.'s Mot. at 3. Therefore, Plaintiffs' claims are not within the scope of Kinetic's dispute resolution provision. In any event, although the Terms do not contain this same limitation, a reasonable consumer in the United States could easily read the Privacy Policy and determine that the dispute resolution provision in the Terms does not apply to them. Accordingly, at *most*, and construing all facts in favor of Plaintiffs, it is ambiguous whether a United States consumer would be bound by the agreement; accordingly, Plaintiffs cannot have clearly and unambiguously manifested their intent to be bound. *See Campbell v. Nissan Motor Acceptance Co. LLC*, No. 23-cv-6161-SRB, 2024 U.S. Dist. LEXIS 167849, at *4-5 (W.D. Mo. Feb. 16, 2024); *Shockley v. PrimeLending,* 929 F.3d 1012, 1017 (8th Cir. 2019) (holding that acceptance is present only when the offeree signifies assent to the terms of an offer in a "positive and unambiguous" manner).

Further, Kinetic's Terms do not delegate the threshold issue of arbitrability to the arbitrator. *See* Duong Decl., **Attachment B**. Thus, the Court must determine whether the current dispute is arbitrable and/or within the scope of the arbitration agreement. *See 3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) ("Unless the parties provide otherwise, the court rather than the arbitrator will determine whether a particular dispute falls within the scope of the clause."). When deciding whether a dispute is within the scope of an arbitration agreement, the court first determines whether the arbitration clause is narrow or broad. *See USW, AFL-CIO-CLC v. Duluth*

*Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005). "If the clause is narrow, then the court determines 'whether the dispute involves an agreement collateral to the agreement containing the arbitration clause.'" *Id.* at 789 (citing *Fleet Tire Serv. v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997)). "Only if the clause is broad does the court analyze whether the dispute relates to the subject matter of the agreement." *Id.*

Here, Kinetic's dispute resolution provision covers "any claim or controversy related in any way to Kinetic's Services." *See* Def's Mot. at 13; Duong Decl., **Attachment B**, § 3(a)(i). The dispute resolution provision only covers disputes related to Kinetic's services, not those that arise from other sources. Because the dispute resolution provision is limited to disputes related to Kinetic's services, the clause is narrow. *See Greenberg & Assocs., Inc. v. Cohen*, No. 05-cv-01233-LTB-MJW, 2005 U.S. Dist. LEXIS 36638, at *18 (D. Colo. Dec. 21, 2005) (citing *Gelco Corp. v. Baker Indus., Inc.*, 779 F.2d 26, 28 (8th Cir. 1985)) (finding a clause narrow when it agreed to arbitrate disputes pertaining to the plaintiff's services). The language "related . . . to" covers claims that have a direct relationship to the services. *See Anderson v. Hansen*, 47 F.4th 711, 718 (8th Cir. 2022). Here, Plaintiffs' allegations concern data tracking on Kinetic's public, consumer-facing Website. Plaintiffs' claims are not related to Kinetic's provision of services, i.e., Kinetic's conduct would have occurred even in the absence of any provision of services or ongoing relationship between Plaintiffs and Kinetic. *Id*. The current dispute is therefore outside of the scope of the dispute resolution provision. Indeed, Kinetic concedes that Plaintiffs' Complaint is based on Plaintiffs' interactions with the Website and Kinetic's "collection or use of information in connection with its website . . . ." Def.'s Mot. at 13. Thus, "it may be said with positive assurance" that Kinetic's dispute resolution provision is "susceptible of an interpretation" that the dispute at issue is outside its scope. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 314 (2010)

(quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986)). Therefore, Kinetic's Motion should be denied.

## II. Kinetic Has Failed to Show that Plaintiffs Manifested Assent to the Website's Terms

Generally, internet contracts fall into one of two categories: browsewrap and clickwrap. *See Foster,* 15 F.4th at 863 (citing *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175-56 (9th Cir. 2014)). In the context of a browsewrap, at issue here, "users are never asked if they agree to the terms and conditions. The terms themselves are also usually provided through a hyperlink rather than directly to the user. So, the validity of a browsewrap agreement often depends on whether there is adequate notice to create actual or constructive knowledge of [the] website's terms and conditions." *Foster*, 15 F.4th at 863 (citing *Nguyen*, 763 F.3d at 1176). "These types of agreements require a more in-depth analysis of assent because the user may not read, nor even be aware of, the terms." *Jordan v. Best Buy Co., Inc.*, No. 24-1066 (DWF/TNL), 2025 U.S. Dist. LEXIS 30983, at *9 (D. Minn. Feb. 21, 2025) (citing *Nguyen*, 763 F.3d at 1176). Establishing inquiry notice of a browsewrap depends on the "the website's overall design and content, including whether 'the existence of [the relevant] terms' are 'reasonably conspicuous' to the user." *Foster*, 15 F.4th at 863. The factors that inform whether the browsewrap is sufficiently conspicuous include the placement of the hyperlink, as well as the font size and color. *See Jordan*, No. 24-1066 (DWF/TNL), 2025 U.S. Dist. LEXIS 30983, at *10 (citing *Nguyen*, 763 F.3d at 1177). Indeed, "[c]ourts will not enforce agreements for which the terms were 'buried at the bottom of the page or tucked away in obscure corners of the website.'" *Id.*

Despite Kinetic's contention that "the notice banner to which Plaintiffs refer is conspicuously located in the bottom right-hand corner of the user's screen," the Website's Cookie Banner contains no reference to the Terms, no indication that a user should click on the link

contained within the banner, no express mechanism by which to manifest assent, no implication that a user agrees to the document contained within the link, and no indication what document is contained within the link. *See* Def.'s Mot. at 5, Duong Decl. ¶ 4. The Terms are buried at the bottom left of the Website, and they are not emboldened, underlined, in a contrasting color, or set off from the surrounding text in any way. *See* Duong Decl. ¶ 9. Thus, Kinetic cannot establish inquiry notice via the browsewrap link to the Terms. *See Jordan*, No. 24-1066 (DWF/TNL), 2025 U.S. Dist. LEXIS 30983, at *10 (citing *Nguyen*, 763 F.3d at 1177); *Engen v. Grocery Delivery E-Services USA Inc.*, 453 F. Supp. 3d 1231, 1238 (D. Minn. 2020).

## III. Kinetic Has Failed to Show that the Customer Plaintiffs Manifested Assent to the Website's Terms Via Account Created or Use of Services

Kinetic argues that Plaintiffs Gonzalez, Griffin, Padgett, and Cox (the "Customer Plaintiffs") assented to the Terms when they signed up for an account and/or ordered services from Kinetic by telephone. *See* Def's Mot. at 2. Kinetic asserts that the Customer Plaintiffs were verbally informed of the Terms during the phone call and that "a confirmation email was sent to them afterward that referred to, and linked to, the Terms and Conditions." *Id.* Notwithstanding that Plaintiffs Gonzalez, Padgett, and Cox have proffered Declarations that refute Kinetic's assertions that they assented to the Terms telephonically,[6] the formation of a contract via phone is still governed by axiomatic principles of contract formation. "[I]n order to make a contract, there must be a meeting of the minds as to all terms," and that "both parties must manifest assent to the particular terms of the contract." *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 79-80 (Ark. 2005). Kinetic's Motion fails to provide details regarding the phone calls and how the Customer Plaintiffs were allegedly informed of the Terms. Indeed, Kinetic proffers no evidence at all that the Customer

[6] *See* Gonzalez Decl. ¶¶ 1-4; Padgett Decl. ¶¶ 1-4; Cox Decl. ¶¶ 1-4.

Plaintiffs actually received notice of the Terms on any call. *See In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, No. MDL No. 3073, 2026 U.S. Dist. LEXIS 38170, at *40-41 (W.D. Mo. Feb. 9, 2026) (finding no agreement to arbitrate when the defendant provided no evidence that the plaintiff was actually informed of the terms). Thus, Kinetic has failed to establish that the Customer Plaintiffs verbally agreed to or acknowledged the Terms during phone calls. *See Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 860-61 (8th Cir. 2022) (finding that arbitration provision did not apply when customers did not verbally acknowledge or assent to the terms).

Similarly, Kinetic fails to establish that Plaintiffs "saw, ever responded to, or otherwise acknowledged the [follow-up] emails" from Kinetic. *Id.* Kinetic's argument is further belied by the fact that the Customer Plaintiffs ostensibly purchased their services over the phone and did not "expect to change their relationship by email." *Id*. Further, the follow-up emails do not contain the text of the Terms or any arbitration agreement, but only a hyperlink to the terms buried at the bottom of the email, without setoff or emphasis. *See* Duong Decl., **Attachment C**. They are therefore insufficient to establish inquiry notice for the same reasons as the Cookie Banner. *See supra* at 8-9.

The monthly bills paid by the Customer Plaintiffs likewise fail to establish notice of the Terms. The references to the Terms appear in only two plain-text lines buried within the emails. *See* Duong Decl, **Attachment D** at 2,[7] 4.[8] Importantly, where, as here, the initial browsewrap

[7] "Use of the Services constitutes your agreement to Windstream's Terms and Conditions maintained at windstream.com/terms, or you may request a copy by calling the number at the top of the bill. See 'Windstream Customer Message' section on this bill for any recent changes to Windstream's Terms and Conditions. If you are a business customer with an existing contract, those contract terms will control."

[8] "Continued use of any Kinetic services means you have agreed to the current Online Terms posted April 1, 2026. All previous versions of the Online Terms are void, including but not limited to, relevant sections that provided for the rejection of changes made to future versions of the Online Terms."

agreement failed to establish inquiry notice, the invoice notice may establish such notice if it itself satisfies independent requirements of effective communication, clear and unequivocal incorporation by reference, and a meaningful opportunity to reject the terms. If those requirements are not met, continued use of the service will not constitute assent to the terms of use, even where the invoice expressly states otherwise. *See Engen*, 453 F. Supp. 3d at 1238 ("[A]n offeree also may be deemed to have assented to a website's contract's terms 'where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound.' For this notice to be effective, however, it cannot be 'buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it.") (quoting *Nguyen*, 763 F.3d at 1177) (internal citation omitted); *see also Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, 891 F. Supp. 2d 1088, 1099 (D.S.D. 2012), *aff'd*, 737 F.3d 492 (8th Cir. 2013) ("Notice of incorporated terms is reasonable where, under the particular facts of the case, '[a] reasonably prudent person should have *seen*' them.") (emphasis in original) (quoting *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011)); *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 829 F. Supp. 3d 700, 715 (W.D. Mo. 2026) ("The receipt provided for [Plaintiff's] 2021 purchase does not provide notice of arbitration, nor does it provide any notice that the purchaser is agreeing to Terms and Conditions. The only reference to the Terms and Conditions is a statement buried in fine print on the second of two pages."). Because the information regarding the Terms was inconspicuous and buried within the text of the billing emails, Kinetic has failed to show Plaintiffs' manifested assent to arbitrate their claims.

## CONCLUSION

Kinetic has failed to meet its burden to show Plaintiffs manifested assent to be bound by the Terms or to arbitrate their claims. Thus, for the foregoing reasons, Kinetic's Motion must be denied.

DATED: July 31, 2026

Respectfully submitted,

Samuel R. Jackson (AR2013247)
sjackson@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
1 Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Mark S. Reich (admitted *pro hac vice*)
mreich@zlk.com
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Plaintiffs and the Proposed Class*